**Frederick J. SCHMITZ, Sr., individually and as Next Friend for Frederick J. Schmitz, Jr., Plaintiffs,**

v.

**UNITED STATES of America, United States Department of Agriculture, United States Forest Service, Adams Trucking & Excavating, Inc., a Michigan corporation, and Robert Wiedman Forest Products, Inc., a Michigan corporation, Defendants.**

No. 1:90–CV–856.

United States District Court, W.D. Michigan, S.D.

May 15, 1992.

Dale R. Sprik, Grand Rapids, Mich., for plaintiffs.

John A. Wilson, Asst. U.S. Atty., John M. Roels, Grand Rapids, Mich., Douglas A. Springstead, Fremont, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

McKEAGUE, District Judge.

This is an action under the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. section 2671 *et seq.* The Court now considers the defendant United States' motion for summary judgment after reviewing the pleadings submitted by both parties, supplemental pleadings as authorized by the Court's April 20, 1992 Order extending the close of discovery, and hearing oral argument on April 20, 1992.

Plaintiff Frederick J. Schmitz, Sr., filed suit alleging the defendant United States of America's negligent conduct resulted in a personal injury to his son, Schmitz, Jr. Jurisdiction for this matter is based on 28 U.S.C. § 1346(b). Defendant now moves for dismissal of the complaint for lack of subject matter jurisdiction. In the alternative, defendant moves for summary judgment.

In June of 1989, Schmitz, Jr. overturned his all-terrain vehicle ("ATV") after he struck a tree stump, located near the edge of a service road in the Manistee National Forest. In 1987, the government, through the Department of Agriculture and U.S. Forest Service, decided to harvest timber in the area of U.S. Forest Service Road # 6816,[1] the road on which plaintiff was injured. To facilitate removal of timber from the area, the government authorized the reconstruction and improvement of the

---

1. Because the road was designated a Maintenance Level 2 road, it was used as access for forest service resource and management purposes and was not subject to the Highway Safety Act.

service road. Reconstruction of the road changed it from a sandy to graveled road with minor brushing along the sides. The design called for a twelve-foot road width.

The contract specified a total clearing limit of 16 feet, including a roadway of twelve feet. Stumps up to twelve inches high were allowed in the clearing limit area, but not in the roadway. This design decision resulted in part from an economic consideration—it was cheaper to leave stumps than to require their removal. Dep. of Boucher, p. 22–23. The deposition testimony of John Huschke, a law enforcement officer and recreation planner for the Forest Service, indicated ATVs commonly operated on forest service roads; but that in 1989 the roads were closed to ATVs unless they were posted open. ATV dealers had this information available.

The complaint alleges the United States was negligent in failing to maintain a reasonably safe roadway for plaintiff, an alleged public invitee; in failing to ascertain the alleged dangerous condition of service road # 6816; in failing to remedy the alleged unsafe conditions; in failing to provide warnings of alleged dangerous condition; in failing to remove the stump involved in the accident; and in failing to act as a reasonable and prudent person under the circumstances. These allegations are also used to support a charge of gross negligence and a public nuisance claim.

## STANDARD

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be made at any time. Fed.R.Civ.P. However, once the lack of jurisdiction is raised by a party, the party asserting jurisdiction (plaintiff in this case) must be given an opportunity to be heard before dismissal is ordered. When the attack is not on the sufficiency of the pleading but a factual attack, no presumptive truthfulness applies to the factual allegations. A dismissal on this ground is not on the merits of the case. The Court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction to hear the action.

Plaintiff has the burden to show the Court that jurisdiction exists. Any factual dispute upon which the existence of jurisdiction may turn is for the Court alone, and not a jury, to decide. *Ohio National Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir.1990).

The Court must first determine whether it has jurisdiction over this matter.

## ANALYSIS

The government contends that this Court lacks jurisdiction to entertain the causes of action alleged by plaintiffs. Jurisdiction is based on the Federal Tort Claims Act, 28 U.S.C. § 1346(b), which reads in part:

> The District Court ... shall have exclusive jurisdiction of civil actions on claims against the United States ... for injury or loss of property, or personal injury ... caused by the negligent or wrongful act or omission of any employee of the government....

The Act also exempts from statutory liability any claim "based upon [a federal agency's or employee's] exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a).

The exception delineates the boundary between "Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). Factors used to assess whether the discretionary function exception bars a suit against the government include (1) the nature of the conduct, not the status of the actor; and (2) whether the action is a matter of choice for the acting employee. Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Berkovitz v. Berkovitz v. United States*, 486 U.S. 531, 536–38, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988). If the challenged

conduct involves an element of judgment, however, the court must decide whether it is of the kind that the discretionary function exception was designed to shield—that is actions and decisions based on considerations of public policy. *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

The discretionary function or duty that is exempted includes more than the initiation of programs and activities. "It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *Dalehite*, 346 U.S. at 35–36, 73 S.Ct. at 967–68. Moreover, the Supreme Court's most recent decision on this issue, *United States v. Gaubert*, —— U.S. ——, ——, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991), stated that when established governmental policy "as expressed or implied by statute, regulation or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."

Congress provided that national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes. 16 U.S.C. § 521a (1982). Jurisdiction of national forest lands is vested in the Forest Service of the Department of Agriculture for administration and protection substantially in accordance with national forest regulations, policies and procedures. 16 U.S.C. § 529 (1982). Further, 16 U.S.C. § 535 provides that the Secretary "is authorized to provide for the acquisition, construction, and maintenance of forest development roads within and near the national forests ... according to specifications which will permit maximum economy in harvesting timber from such lands tributary to such roads and at the same time meet the requirement for protection, development, and management thereof, and for utilization of other resources thereof."

The government argues that the facts establish that the exercise of discretionary authority is the source of this dispute. Consequently the Court lacks jurisdiction. The Forest Service administers the national forests in a manner to facilitate multiple use of resources. 16 U.S.C. § 529 (1982). Due consideration must be given to the relative values of the various resources in particular areas, however, Congress gave no indication as to the weight to be assigned each value. 16 U.S.C. § 529 (1982). Apparently this is left to the discretion of the Forest Service. *See Sierra Club v. Hardin*, 325 F.Supp. 99, 123 (D.C.Alaska 1971).

Congress also directed the Forest Service to develop standards for roadway construction. 16 U.S.C. § 1608 (1982). Accordingly, the individual forest supervisor and his designee possess authority over road design and construction. See Forest Service Manual of Directives established pursuant to 36 C.F.R. 200.4. Under the Forest Service Manual of Directives, the forest supervisor is to provide direction that can be used to establish road design criteria, to document design criteria and standards decisions and their basis; and to ensure that the operation and maintenance of each transportation facility complements its design. Defendant's Exhibit L.

The government concludes that the foregoing traces a line of discretionary authority from the Chief Magistrate of the United States to the Manistee National Forest Supervisor and his assistants. It further indicates that a policy decision has been made to administer the national forests for multiple use and sustained yield of national resources.

The design of Forest Road 6816 was predicated on its use as an access road to be used in the timber harvest. The Forest Engineer, Supervisor and District Ranger approved the design. The design called for a clearing width of 16 feet, with twelve-inch stumps allowed outside the travelled roadway but within the clearing limits. Stumps of twelve inches could be left in place because the equipment used to fell

and remove timber had clearances of 25 to 30 inches and because it saved money to cut trees and not grub stumps. The stump at issue in this case met the construction specifications. Accordingly, the government concludes that the discretionary function exception of the FTCA applies in that discretion in the design and execution of the road reconstruction was properly exercised by the appropriate officers and policy considerations in management of national forest resources and economics determined the parameters of the contract.

Plaintiff, on the other hand, argues that the exception does not apply because the alleged negligence occurred at the operational level rather than the planning level of governmental activity. Plaintiff asserts that the defendants' argument is premised on the basis that all actions the government or its agents may take should be immune from tort liability because all governmental activities can be traced up through the ranks of administrative superiors to the individual who promulgated the policy. Here, plaintiff is complaining of negligence of the "field" employees in allowing freshly cut tree stumps to remain in or abutting a frequently travelled roadway. Plaintiff concedes that allowing tree stumps up to twelve inches to remain in the forest may be a policy decision; however, the plaintiff concludes that even if the government exercised discretionary authority in deciding to recondition the road, once the decision was made, the government had to carry out this operational function in a non-negligent manner. *C.L.R. Co. v. United States*, 473 F.2d 714 (5th Cir.1973) (U.S. held liable for damages caused by the negligent design of a drainage ditch). All of the cases plaintiff cites to support this proposition were decided prior to 1975, when the standard focused on the planning versus operation distinction. *Gaubert* effectively terminated an analysis of government conduct based on this distinction.

Plaintiff's view of the planning function is inappropriately narrow. He would confine the planning function to the decision to build the road and exclude the decision as to how wide the road should be, the size of the clearing, and all the factors that went into the design of the road. The exemption to the Act is suppose to prevent second guessing of legislative and administrative decisions grounded in social, economic, and political policy by the Court. Accordingly, the Court finds that the decision as to how wide the road should be, and whether stumps may remain in the cleared area, is a discretionary function. If the design specifications were not met, the plaintiff would have presented a more colorable argument; but that is not the case here.

Although plaintiff suggests that the exact location of the stump relative to the road is unknown, the evidence suggests otherwise. John Huschke, a Forest Service representative, stated in his deposition that the stump in question was at least one and one-half feet from the travelled portion of the road. Dep., p. 20. George Boucher, civil engineer for the Forest Service, testified to the same. Dep., p. 20. Although plaintiff alleges that when his vehicle struck the stump, his right rear wheel was still touching the improved portion of the roadway, a factual dispute is not created because plaintiff also admits he was not actually looking at the tire prior to the accident and that he had no idea where he was going immediately preceding the accident. Dep., pp. 89, 97, 100.

Nor can plaintiff create a factual issue through the deposition testimony of Forest Service Representative Edward Miller, in which he stated that when viewing the accident scene he could not discern vegetation between the graveled portion of the roadway and the stump in question. The photographs of the site of the accident, offered as defendant's Exhibits D and M, show that the stump was not in the travelled portion of the road.

Finally, the Court's grant of additional time for discovery with respect to the location of the stump did not elicit any evidence favorable to the plaintiff on this issue. Plaintiff submitted the affidavit of Robert Sprik, investigator. Sprik states that he originally inspected and photographed the scene of the accident in July of 1989 and measured the stump itself. Sprik makes no mention of whether he measured the

distance of the stump to the road. The omission is glaring. Sprik returned to the site in April, 1992. Because the road had been altered, Sprik could not measure the distance between the road and the stump as it occurred at the time of the accident.

Accordingly, this Court finds that defendants' decision as to what type of road to build and the design of that road falls within the discretionary function exception. Further, the Court finds the road was constructed in compliance with the design. Therefore, the defendant's motion for dismissal is GRANTED and the complaint is DISMISSED.